

# United States Department of Justice

United States Attorney
Southern District of West Virginia

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

Mailing Address
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104



FILED JUL 1 6 2014
TERESA L. DEPPNER, CLERK
U S. District Court
Southern District of West Virginia

May 1, 2014

J. Timothy DiPiero
DiTrapano Barrett & DiPiero
604 Virginia Street, East
Charleston, West Virginia 25301-2184

Re: United States v. Scott E. Ellis

Dear Mr. DiPiero:

This will confirm our conversations with regard to your client, Scott E. Ellis. As a result of these conversations, it is agreed by and between the United States and Mr. Ellis as follows:

1. **CHARGING AGREEMENT.** Mr. Ellis agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

2. **RESOLUTION OF CHARGES.** Mr. Ellis will plead guilty to a violation 31 U.S.C. § 5324(a)(3) (structuring) as charged in said information.

3. **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Mr. Ellis will be exposed by virtue of this guilty plea is as follows:

   (a) Imprisonment for a period of five years;

   (b) A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

SE
———————
Defendant's
Initials

J. Timothy DiPiero
May 1, 2014                                      Re: Scott E. Ellis
Page 2

    (c)   A term of supervised release of three years;

    (d)   A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

    (e)   An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, as may otherwise be set forth in this plea agreement.

    (f)   Costs of prosecution.

    4.   **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Mr. Ellis will tender a check or money order to the Clerk of the United States District Court for $100, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Mr. Ellis will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Mr. Ellis fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Ellis.

    5.   **FORFEITURE.** Mr. Ellis hereby agrees as follows:

    (a)   To forfeit to the United States $215,355.85 representing a portion of the funds involved in and traceable to the illegal structuring conduct undertaken by Mr. Ellis and others as set forth in the Information, pursuant to 31 U.S.C. § 5317(c)(1), or as substitute assets pursuant to 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(p), and, as such, consents to the entry of judgment against him in this criminal action forfeiting same;

    (b)   To tender a cashier's check in the amount of $215,355.85 payable to the Clerk of the United States District Court for the Southern District of West Virginia within ten (10) days of the filing of this Information;



                                                Defendant's Initials

(c)  Acknowledges that his failure to pay said funds as described above constitutes a breach of the plea agreement;

(d)  To indemnify the United States or otherwise make whole the value of any of the above-referenced items to which any other person may assert, or has asserted, a claim to lawful ownership;

(e)  To assist the United States and its agents in identifying all such property, regardless of its location and the manner in which it is titled, and to fully complete and execute, under oath, a Financial Affidavit in a form supplied by the United States which Affidavit shall be completed, signed and returned to counsel for the United States within seven calendar days from the date of signing this plea agreement;

(f)  To provide sworn testimony and to execute any documents deemed necessary by the United States to effectuate the forfeiture and to transfer title to the said property to the United States; and,

(g)  To waive any defenses to this criminal action, or to any related administrative or judicial forfeiture action, based in whole or in part on the Excessive Fines Clause of the Eighth Amendment to the Constitution, or the holding or principles set forth in United States v. Alexander, 509 U.S. 544 (1993); United States v. Bajakajian, 524 U.S. 321 (1998); United States v. Austin, 509 U.S. 602 (1993) and their progeny.

6.  **PAYMENT OF MONETARY PENALTIES.**  Mr. Ellis agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States.  So long as the monetary penalties are ordered to be due and payable in full immediately, Mr. Ellis further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments



Defendant's Initials

and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

7. **COOPERATION.** Mr. Ellis will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Mr. Ellis may have counsel present except when appearing before a grand jury. Further, Mr. Ellis agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

8. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Mr. Ellis, and except as expressly provided for in paragraph 10 below, nothing contained in any statement or testimony provided by Mr. Ellis pursuant to this agreement, or any evidence developed therefrom, will be used against Mr. Ellis, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

9. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Ellis for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Ellis for perjury or false statement if such a situation should occur pursuant to this agreement.

10. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Ellis stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Mr. Ellis agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by Mr. Ellis, and Mr. Ellis is subsequently tried on any of the charges in


Defendant's Initials

the information, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Ellis or of any of his witnesses, or in rebuttal of any testimony introduced by Mr. Ellis or on his behalf. Mr. Ellis knowingly and voluntarily waives, see <u>United States v. Mezzanatto</u>, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Mr. Ellis understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

11. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Ellis agree that the following provisions of the United States Sentencing Guidelines apply to this case.

<u>USSG §2S1.3</u>

| | |
|---|---|
| Base Offense Level | 6 |
| Amount of funds structured from §2B1.1 Table $200,000 > $400,000 | 12 |
| Promotion of unlawful activity | 2 |
| Adjusted Offense Level | 20 |

The United States and Mr. Ellis acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

_SE_
Defendant's Initials

     12. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Ellis knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

     Mr. Ellis also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

     The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

     13. **WAIVER OF FOIA AND PRIVACY RIGHT.** Mr. Ellis knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

     14. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

     (a)   Inform the Probation Office and the Court of all relevant facts and conduct;



Defendant's Initials

(b) Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

(c) Respond to questions raised by the Court;

(d) Correct inaccuracies or inadequacies in the presentence report;

(e) Respond to statements made to the Court by or on behalf of Mr. Ellis;

(f) Advise the Court concerning the nature and extent of Mr. Ellis' cooperation; and

(g) Address the Court regarding the issue of Mr. Ellis' acceptance of responsibility.

15. **VOIDING OF AGREEMENT.** If either the United States or Mr. Ellis violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

_SE_
Defendant's Initials

16. **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Mr. Ellis in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Mr. Ellis in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

R. BOOTH GOODWIN II
United States Attorney

By: *(signature)*

MEREDITH GEORGE THOMAS
Assistant United States Attorney

By: *(signature)*

THOMAS C. RYAN
Assistant United States Attorney

TCR/smw

*SE*
Defendant's
Initials

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this nine-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____      _5-2-2014_____
Scott E. Ellis                 Date Signed
Defendant

_____      _5-2-14_____
J. Timothy DiPiero             Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

v.  CRIMINAL NO._____
                                31 U.S.C. § 5324(a)(3)
                                18 U.S.C. § 2

**SCOTT E. ELLIS**

## I N F O R M A T I O N

The United States Attorney Charges:

### Background

On or about September 21, 2012, in Logan, Logan County, West Virginia, in the Southern District of West Virginia and elsewhere, defendant SCOTT E. ELLIS, aided and abetted by Stephen B. Herndon, did knowingly and for the purpose of evading the reporting requirements of section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure, assist in structuring, and attempt to structure and assist in structuring, a transaction with Logan Bank and Trust bank, a domestic financial institution, by cashing a check written to defendant SCOTT E. ELLIS from an American Electric account at J.P. Morgan Chase bank account, signed by Stephen B. Herndon, in an amount of $9,800.00.

PLEA AGREEMENT EXHIBIT "A"

In violation of Title 31, United States Code, Section 5324(a)(3); Title 31, Code of Federal Regulations, Sections 1010.100(t), 1010.311, and 1010.313; and Title 18, United States Code, Section 2.

PLEA AGREEMENT EXHIBIT "A"

**FORFEITURE**

In accordance with 31 U.S.C. § 5317(c)(1) and Rule 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon the conviction of the defendant SCOTT E. ELLIS for a violation of 31 U.S.C. § 5324(a)(3) and 18 U.S.C. § 2, as set forth in Count One of the Information, the defendant shall forfeit to the United States any property, real or personal, involved in the offense and any property traceable thereto, including but not limited to the sum of $215,355.85, more or less, in United States currency involved in, or traceable to, the illegal structuring activity set forth more fully in Count One, for which sum the United States intends to seek the entry of a judgment.

## NOTICE OF INTENT TO FORFEIT SUBSTITUTE ASSETS

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred to, sold to, or deposited with a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of said property listed above as being subject to forfeiture.

UNITED STATES OF AMERICA

R. BOOTH GOODWIN II
United States Attorney

By: _____
MEREDITH GEORGE THOMAS
Assistant United States Attorney


By: _____
THOMAS C. RYAN
Assistant United States Attorney

PLEA AGREEMENT EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                              CRIMINAL NO. _____

SCOTT E. ELLIS

## STIPULATION OF FACTS

The United States and Scott Ellis stipulate and agree that the facts comprising the offense of conviction in the Information in the Southern District of West Virginia, and the relevant conduct for that offense, include the following:

Since at least January 2009, Mr. Ellis has owned and operated Tri-State Mine Service, Inc. ("Tri-State"), a West Virginia corporation headquartered in Logan County, West Virginia. Tri-State primarily performed rebuilds for the Mountain Laurel Mining Complex, which is owned by Mingo Logan Coal Company, a wholly owned subsidiary of Arch Coal, Inc. Rebuild jobs generally included the disassembly, cleaning and inspection of machines used in coal mining, with the rebuilding or replacement of parts that were worn, broken, or scheduled to be replaced.

To ensure that Tri-State received rebuild work from the Mountain Laurel Mining Complex, Mr. Ellis participated in a bid-rigging scheme with several other vendors. In exchange for guaranteeing the winning bid on certain rebuild jobs, each of the participating vendors were required to pay an Arch employee ("Known Person Three") generally ten-percent (10%) in cash kickbacks (the "Rebuild Kickback Scheme").

Most of the payments to Known Person Three were delivered through the Mountain Laurel warehouse manager, Stephen Herndon.

*SE*
Defendant's Initials

PLEA AGREEMENT EXHIBIT "B"

Mr. Ellis usually delivered the cash in an envelope to Mr. Herndon or another Arch employee ("Known Person Four"), or left the envelope in Mr. Herndon's desk or under the mat on the floorboard of Mr. Herndon's truck.

To generate the cash, Mr. Ellis intentionally structured cash withdrawals from various personal and business accounts in amounts of $10,000 or less. Mr. Ellis conducted the cash withdrawals in this manner because he was aware of the bank's obligation to file a Currency Transaction Report ("CTR") with the Internal Revenue Service if he withdrew more than $10,000 in cash.

Mr. Ellis primarily structured cash from Logan Bank and Trust ("LB&T") and Bank of Mingo, both of which are financial institutions with deposits insured by the Federal Deposit Insurance Corporation.

Between early 2009 through around March 2011, Mr. Ellis estimates that he structured approximately $163,521.25 in cash from various banks. Mr. Ellis estimates that virtually all of those funds were used to pay the cash kickbacks to Known Person Three as part of the Rebuild Kickback Scheme, and that during that time period, he paid $187,500 in cash kickbacks. The cash kickback payment amounts varied according to the time of the month the payments were delivered.

Around April 1, 2011, Mr. Herndon left Arch Coal and Mr. Ellis gave him a half-interest in Tri-State. Around March 1, 2012, Mr. Herndon also formed American Electric, LLC ("American Electric"), a West Virginia limited liability company, with Gary Roeher, another vendor who provided goods and services to the Mountain Laurel Mining Complex. American Electric primarily did pump repair work.

With respect to Tri-State, Mr. Ellis and Mr. Herndon continued to participate in the bid-rigging scheme with other vendors and pay kickbacks to Known Person Three. By that time, Known Person Three required the kickback payments to be paid generally $10,000 a month rather than ten-percent deal At times, Mr. Ellis and Mr. Herndon allowed the amount of kickbacks they owed to Known Person Three to accumulate, and they then paid

_SE_
Defendant's Initials

**PLEA AGREEMENT EXHIBIT "B"**

2

Known Person Three cash kickbacks of more than $10,000 at one time.

To generate the cash, Mr. Ellis, now joined by Mr. Herndon, continued to structure cash withdrawals from various banks to generate sufficient funds, at least in part, to pay kickbacks to Known Person Three.

As an example of one of the numerous structuring transactions, Mr. Herndon wrote Mr. Ellis a check for $9,800 on the American Electric account at J.P. Morgan Chase Bank on September 19, 2012. Mr. Ellis subsequently endorsed and cashed the check at the Fountain Place Mall branch of Logan Bank and Trust ("LB&T") in Logan, Logan County, West Virginia, on September 21, 2012. Mr. Ellis and Mr. Herndon used the proceeds of this check to pay Known Person Three a kickback. Although they owed more than $10,000 in kickbacks at that time to Known Person Three, Mr. Herndon and Mr. Ellis purposefully kept the amount of the check under $10,000 because they did not want LB&T to file a CTR.

Between April 1, 2011, and September, 30, 2013, Mr. Herndon and Mr. Ellis, working in concert with each other, structured cash from various personal and business accounts in an amount of $183,835. Mr. Herndon and Mr. Ellis estimate they used virtually all of those structured funds to pay cash kickbacks to Known Person Three, and that during that time period, they paid $237,000 in cash kickbacks to Known Person Three.

The cash kickback amount is larger than the amount structured during the relevant timeframe because Mr. Herndon and Mr. Ellis included in the kickbacks cash from checks, in varying amounts, that were not structured. Mr. Herndon and Mr. Ellis did not keep records of the cash kickbacks paid to Known Person Three. The kickback estimates are based upon a review of the relevant bank records and course of dealing with Known Person Three.

*SE*
Defendant's Initials

**PLEA AGREEMENT EXHIBIT "B"**

This Stipulation of Facts does not contain each and every fact known to Mr. Ellis and to the United States concerning his involvement and the involvement of others in the charges set forth in the Information, and is set forth for the limited purpose of establishing a factual basis for the defendant's guilty plea.

Stipulated and agreed to:

_____       5-7-2014
SCOTT E. ELLIS                        Date
Defendant

_____       5-7-2014
J. TIMOTHY DIPIERO                    Date
Counsel for Defendant

_____       5.15.2014
MEREDITH GEORGE THOMAS                Date
Assistant United States Attorney

_____       5.14.14
THOMAS C. RYAN                        Date
Assistant United States Attorney

_____
SE
Defendant's
Initials

**PLEA AGREEMENT EXHIBIT "B"**

4