IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

v.                                    CRIMINAL NO. 2:14-00111

**SCOTT E. ELLIS**

**UNITED STATES OF AMERICA**

v.                                    CRIMINAL NO. 2:14-00114

**RONALD BARNETTE**

**RESPONSE OF THE UNITED STATES TO DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF CONTINUED REPRESENTATION BY RETAINED COUNSEL**

Comes now the United States of America by Meredith George Thomas, Assistant United States Attorney for the Southern District of West Virginia, and responds to Defendants' Joint Memorandum of Law in Support of Continued Representation by Retained Counsel.

**I.  Legal Standard**

Defendants may waive their Sixth Amendment right to an attorney who is free from conflicts of interest, so long as the waivers are knowing, voluntary and intelligent. United States v. Brown, 202 F.3d 691, 697 (4th Cir. 2000) (quotations omitted).

To meet this standard, "the lawyer, the Government, and the district court should provide the defendant with as much relevant information as possible about the conflict before the

court accepts a waiver of the conflict of interest." Id. at 697-98. A defendant need not know "each detail concerning the conflict" but needs to understand "the crux of the conflict" and have "an understanding of its implications." Id.

In Wheat v. United States, the Supreme Court explained that "while the right to select and be represented by one's preferred attorney is comprehended by the sixth amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer to whom he refers." Wheat, 486 U.S. 153, 159 (1988). Accordingly, "a district court may disqualify a defendant's counsel of choice in spite of an express waiver by that defendant of any conflict of interest." United States v. Urutyan, 564 F.3d 679, 686 (4th Cir. 2009) (quoting Wheat, 486 U.S. at 162).

The Fourth Circuit explained in Urutyan that conflicts are "notoriously hard to predict." Id. (quoting Wheat, 486 U.S. at 162). While a presumption exists in favor of a defendant's choice of counsel, this presumption may be overcome by either an "actual conflict" or a "serious potential for conflict." Id. (quoting United States v. Basham, 561 F.3d 302, 323 (4th Cir. 2009) (quoting Wheat, 486 U.S. at 162).)

## II. Analysis

Counsel for the defendants has represented that Defendant Ellis and Defendant Barnette lacked "any criminal interplay," had a "minimal amount of direct knowledge" regarding each other and their roles at Mountain Laurel Mining Complex, and "none of the statements from Ellis implicate Barnette in any jointly undertaken criminal activity." ECF at 7, 11. Counsel further represents that Ellis and Barnette essentially have no information regarding the other and were on "completely unrelated spokes" of a criminal conspiracy. ECF at 9.

The United States disagrees with the assertions that Barnette and Ellis have no information regarding each other and did not participate in criminal activity together. Both defendants have made statements to the United States regarding each other, as explained below.

Based on the representations by counsel regarding the defendants' lack of knowledge and lack of criminal participation with each other, the United States has concerns as to whether the waivers entered into by the defendants are knowing and intelligent. Should the Court allow Mr. Hissam to represent both parties, the United States respectfully asks that the Court have a detailed <u>in camera</u> discussion with each defendant regarding such a waiver to ensure that the waiver is knowing and intelligent.

Given the current posture of their cases, should both defendants abide by their plea agreements, accept the relevant conduct as agreed upon in their plea agreements, and be sentenced, the United States does not anticipate that either defendant would be called as a witness against the other. If the waivers by Ellis and Barnette are determined by the Court to be knowing and intelligent, the United States does not, as a general matter, object to the waiver of conflict in this case. Taking Ellis's motion on its face, the parties can waive conflicts or potential conflicts.

It is unclear, however, whether the assertions that the defendants were not criminally involved with each other affects their acceptance of responsibility and the United States is not taking a position on that matter at this time.

**III. Factual Issues**

The United States provides this information to the Court to ensure the defendants' have executed a knowing and voluntary waiver of any existing or potential conflict of interest. This section of the memorandum explains the United States' current knowledge regarding the relationship between Tri-State Mine Service, LLC ("Tri-State"), the company associated with Ellis, and Mining Repair Specialist, Inc. ("MRS"), the company associated with Barnette, and the related dealings of the two defendants.

### A. Factual Account of Defendant Barnette

The defendants' filing refers to a memorandum of interview from March 22, 2014, with Barnette to demonstrate that contacts between Barnette and Ellis were limited. ECF 33 at 4.

In a later interview with Barnette and his wife, on July 25, 2014, after Barnette signed a plea agreement, Barnette admitted that he tried to get defendants Scott Ellis and Steve Herndon to stand up to David Runyon, the general manager at Mountain Laurel. According to Barnette, Ellis and Herndon agreed that they would stand up to Runyon, but they did not.

During that interview, Barnette further told investigators that while Stephen Herndon was the warehouse manager at Mountain Laurel, Herndon told Barnette that he needed MRS to bid on scoops. Barnette knew that MRS was not going to get the work since his bid was not going to be the lowest. Barnette explained that Herndon just wanted MRS in as another bidder.

### B. Factual Account of Defendant Ellis

Ellis related his understanding of the bidding process at Mountain Laurel at his initial interview with agents. He told agents that Stephen Herndon awarded all bid jobs and generally the same companies were awarded a specific type of job each time. Tri-State was usually awarded feeder, scoop and miner pan jobs. MRS always got whole miner jobs. Ellis explained that it

was his understanding that MRS was never required to actually submit bids for jobs.[1]

Ellis further explained that Stephen Herndon let the contractors know who would be awarded a bid and told Ellis to call MRS to discuss what their bids would be. According to Ellis, while Herndon would not provide the Mountain Laurel vendors with a specific amount for them to bid, Herndon may have given the vendors a range that Mountain Laurel was willing to pay for a job. According to Ellis, Ellis would then call Barnette and tell him Tri-State's bid amount.

### C. Related Nature of Defendants' Dealings

This information regarding the defendants' knowledge of each other's activities at Mountain Laurel is material should one defendant ever be required to be a witness against the other. Moreover, there may be additional information that the United States, at this time, does not know. Both defendants currently have plea agreements with the United States which require cooperation with the United States Attorney's Office and other law enforcement agencies. However, the United States has not further inquired with either defendant as to the knowledge that defendant has regarding the other's actions at Mountain Laurel, as the issue of representation remains undecided by the

---

[1] It is the United States' position that Ellis believed that MRS received jobs from Mountain Laurel without having to bid on them.

Court. Moreover, the United States generally stopped investigating the defendants' acts at Mountain Laurel once plea agreements were entered into by the United States and the defendants.

**IV. Conclusion**

The United States is not opposed to conflict waivers in this case, as the United States does not expect the defendants to be called as witnesses against each other. This position assumes that the defendants intend to abide by their plea agreements, accept the relevant conduct as agreed upon in their plea agreements, and be sentenced. Should the Court allow Mr. Hissam to continue to represent Barnette and Ellis, the United States respectfully requests that the Court examine each defendant <u>in camera</u> to ensure any waiver is voluntary, knowing and intelligent.

Respectfully submitted,

R. BOOTH GOODWIN II
United States Attorney

<u>/s/Meredith George Thomas</u>
MEREDITH GEORGE THOMAS
Assistant United States Attorney
WV Bar No.10596
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email:meredith.thomas@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "RESPONSE OF THE UNITED STATES TO DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF CONTINUED REPRESENTATION BY RETAINED COUNSEL" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this the 9th day of January, 2015, to:

>Michael B. Hissam
>Bailey & Glasser LLP
>209 Capitol Street
>Charleston, West Virginia 25301

>/s/Meredith George Thomas
>MEREDITH GEORGE THOMAS
>Assistant United States Attorney
>WV Bar No.10596
>300 Virginia Street, East
>Room 4000
>Charleston, WV 25301
>Telephone: 304-345-2200
>Fax: 304-347-5104
>Email:meredith.thomas@usdoj.gov