IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.                                    **CRIMINAL ACTION NO. 2:14-00111**

**SCOTT E. ELLIS**

    **Defendant.**

## Defendant's Sentencing Memorandum

Defendant Scott E. Ellis ("Defendant"), by counsel, submits this memorandum in advance of his sentencing hearing, which is currently set for April 22, 2015. In light of Mr. Ellis' early and full cooperation, the nature and circumstances of his offense, and the sentences imposed on similarly situated defendants, Mr. Ellis respectfully suggests that a sentence of probation, without the condition of home confinement, is appropriate in this case and fully consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).

## Background

Scott Ellis has worked at his family-owned rebuild shop, Tri-State Mine Service, Inc. ("Tri-State") in Holden, West Virginia, since he was fourteen years old.[1] In 2003, he bought the family business from his mother and stepfather. Scott was a welder by trade. He took over the management of the business with just $10,000 in the bank, 8 to 10 employees to pay, and little business experience. Like many small business owners starting out, Scott had no idea where the next job was going to come from — or whether he was going to be able to pay bills and make payroll. Eventually, he started doing work for the predecessor to Mountain Laurel. The jobs

---

[1] In connection with the filing of this memorandum, counsel for Mr. Ellis submitted under separate cover ten sentencing letters to the Court, the Probation Officer, and counsel for the United States.

were slow to come, and small at first, but it was good, paying work.  Then, about six to eight months after he had started doing work at the mine, the maintenance manager at Mountain Laurel, Gary Griffith, acting on behalf of David Runyon, approached Scott about paying kickbacks to obtain additional jobs.  Scott gave in, and began making payments.

Eventually, Steve Herndon assumed Griffith's role in demanding and collecting kickbacks from vendors.  Herndon was much more aggressive in collecting kickback payments, which were set at 10% of all work that Tri-State performed for Mountain Laurel.  Herndon kept close track of the amount of kickbacks due, and if Scott was unable to make a full payment, Herndon would ensure that Scott did not receive any additional work until payment was made.  On more than one occasion when Ellis was behind on his payments, Herndon would order Ellis to report to the Mountain Laurel office, where Ellis would have to watch while Herndon awarded work to Tri-State's competitors.

After Scott's father died in 2010 — and out of frustration with the constant demand for kickbacks — Scott temporarily quit paying kickbacks and told the folks at Mountain Laurel that he was closing Tri-State.  Runyon and Steve Herndon pursued Scott incessantly to continue doing work at Mountain Laurel, and promised that he would no longer have to pay kickbacks.  About a month later, however, after Scott had performed significant work and needed to be paid, they renewed their demand that he resume paying kickbacks.  Once again, Scott acted in poor judgment and acceded to the demand for payments in order to keep his business going.

To come up with cash to make the kickback payments, Scott "structured" cash withdrawals from financial institutions, the crime to which he plead guilty before this Court on July 16, 2014. Scott made the kickback payments, which were based on 10% of Tri-State's *revenues*, out of Tri-State's *profits* — so much so that, at the height of the payments, Tri-State

2

ran on razor-thin margins.  Moreover, Scott did not submit any false or inflated invoices to Mountain Laurel in connection with the work that Tri-State performed.  Nor did Scott commit any tax offenses in connection with his "structured" transactions or the kickback payments he made.

In the final Presentence Investigation Report ("PSR"), the Probation Officer has calculated a total offense level of 17 (after a three-level reduction for acceptance of responsibility) and a Criminal History Category of I, resulting in an advisory Guideline imprisonment range of 24 to 30 months.  There are no remaining objections to the PSR to be resolved at sentencing.  For the reasons set forth below, however, Defendant respectfully suggests that a downward variance and a sentence of probation is appropriate in this case.

### Sentencing Factors

o  *Significant Acceptance of Responsibility*.  Mr. Ellis's acceptance of his guilt and his cooperation in this investigation was nearly instantaneous.  Mr. Ellis was the third defendant to cooperate with authorities, after Gary Roeher and Stephen Herndon.  As soon as Mr. Ellis learned that case agents had arrived at his house seeking to interview him, he telephoned the case agents and made arrangements to come home from out of state and come clean to authorities the very next day.  At that time (the day immediately following Stephen Herndon's interview), Mr. Ellis met with the case agents without a lawyer, admitted to his full involvement in the Mountain Laurel scheme, and began providing active cooperation to the Government.

o  *Unwarranted Sentencing Disparities.*  The Court is familiar with the advisory Guideline ranges and sentences of probation that have been imposed for other similarly situated Mountain Laurel contractors who acquiesced to Runyon's demands for payment.  The recent sentencing hearings for certain similarly situated defendants bear special emphasis:

- The case most similar to Mr. Ellis's is the case involving Stephen Herndon (Case No. 2:14-cr-110). In 2011, Herndon left Mountain Laurel and demanded a position for himself and his wife at Tri-State. While at Tri-State, Ellis and Herndon jointly "structured" currency transactions in order to continue making kickback payments to Runyon. Herndon began cooperating with authorities the day before Ellis and — through the same counsel at the time — negotiated a single count plea to "structuring." Unlike Herndon, however, Ellis was never inside at Mountain Laurel, and thus never in the position of having demanded — and actually received — kickback payments from vendors. On February 9, 2015, this Court sentenced Herndon to probation for a term of five years, without the condition of home confinement.
- In addition, on March 11, 2015, this Court imposed a below-Guidelines sentence of five years' probation, with the first six months to be served on home confinement, on Russell R. Grimmett (Case No. 2:14-cr-237). Like Mr. Ellis, Defendant Grimmett was being sentenced for "structuring," with a final adjusted offense level of 17 and a Guideline range of 24 to 30 months' imprisonment.

  o *Just Punishment for the Offense and Adequate Deterrence.* Mr. Ellis has suffered

mightily for his extraordinary lapse in judgment in this case. In addition to facing the prospect of a felony conviction, Mr. Ellis has suffered staggering financial consequences. He paid $215,355 in forfeiture to the United States in connection with his plea agreement. In addition, Mr. Ellis's company was fired from all further work with Arch and banned from the Mountain Laurel complex in May 2014. Given that Arch represented essentially all of Tri-State's business, Mr. Ellis had no choice but to idle his rebuild shop. Since that time, the business has bled cash, and

Mr. Ellis has not been able to find a buyer for the business or its assets.  He has lost his ability to generate income, which has had a major impact on his family, including his two daughters who will soon be going off to college.  There is no greater need for deterrence than that.  As with other vendors who were caught up in the Mountain Laurel scheme, the message from Mr. Ellis's case is clear:  business owners who are swayed to participate in the culture of corruption in southern West Virginia stand to lose everything that their hard work has earned them.

## Conclusion

Mr. Ellis respectfully suggests that, after consideration of the factors enumerated in 18 U.S.C. § 3553(a), and consideration of any motion for substantial assistance made by the United States, this Court is justified in substantially departing and varying from the advisory Sentencing Guideline range to a sentence that would permit a term of probation to be imposed, without the condition of home confinement.  The Defendant does not anticipate presenting any live testimony at sentencing, unless necessary to rebut any such testimony presented by the Government. The Defendant believes that the sentencing hearing in this matter will consume approximately one half hour.

**Scott E. Ellis,**
**By Counsel.**

/s/Michael B. Hissam
Michael B. Hissam (WVSB #11526)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*
mhissam@baileyglasser.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**UNITED STATES OF AMERICA**

v.                           **CRIMINAL ACTION NO. 2:14-00111**

**SCOTT E. ELLIS**

    **Defendant.**

### CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of April, 2015, I filed the foregoing **Defendant's Sentencing Memorandum** using the Court's CM/ECF system, which will cause a copy to be served upon the following:

> Meredith George Thomas
> Assistant United States Attorney
> Robert C. Byrd Courthouse
> 300 Virginia Street East, Suite 4000
> Charleston WV 25301

> /s/Michael B. Hissam
> Michael B. Hissam (WVSB #11526)