IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

```
_____x
                               :
UNITED STATES OF AMERICA,       :        Criminal Action
                               :
               Plaintiff,       :        No.  2:14-cr-00111-1
                               :
v.                              :
                               :        Date:  April 22, 2015
SCOTT E. ELLIS,                 :
                               :
               Defendant.       :
_____x
```

TRANSCRIPT OF SENTENCING HEARING HELD
BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Government:        AUSA MEREDITH G. THOMAS
                           U.S. Attorney's Office
                           P.O. Box 1713
                           Charleston, WV  25326-1713

For the Defendant:         MICHAEL B. HISSAM, ESQ.
                           Bailey & Glasser
                           209 Capitol Street
                           Charleston, WV 25301-1386

Probation Officer:         Michele Jones

Court Reporter:            Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1      PROCEEDINGS had before The Honorable Thomas E. Johnston,

2   Judge, United States District Court, Southern District of West

3   Virginia, in Charleston, West Virginia, on April 22, 2015, at

4   2:06 p.m., as follows:

5          COURTROOM DEPUTY CLERK:  The matter before the Court is

6   the United States of America versus Scott Ellis, criminal action

7   number 2:14-cr-00111, scheduled for sentencing.

8          THE COURT:  Good afternoon.  Will counsel please note

9   their appearances?

10         MS. THOMAS:  Meredith George Thomas on behalf of the

11  United States.

12         MR. HISSAM:  Mike Hissam on behalf of the defendant,

13  Scott Ellis, who is present in the courtroom.

14         THE COURT:  Good afternoon.

15      Good afternoon.  Mr. Ellis, will you please stand, and I

16  will ask the deputy clerk to administer an oath to you at this

17  time.

18         COURTROOM DEPUTY CLERK:  Please raise your right hand.

19             **CHRISTOPHER ELLIS, DEFENDANT, SWORN**

20         THE COURT:  You may be seated.

21      Mr. Ellis, do you understand that you now under oath and you

22  must tell the truth and, if you testify falsely, you may face

23  prosecution for perjury or for making a false statement?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Throughout the course of this hearing, if

1    there's anything that occurs that you don't understand, I want

2    you to feel free to speak up and seek clarification.

3        Also, if at any time you need to confer with your attorney,

4    I'll be pleased to pause the proceedings to allow you to do so.

5    Do you understand all that?

6        THE DEFENDANT:  Yes, sir.

7        THE COURT:  All right.  Mr. Hissam, have you received

8    and read and reviewed with your client a copy of the Presentence

9    Report -- or the most recent edition of the Presentence Report?

10        MR. HISSAM:  I have, Your Honor.  I have, Your Honor.

11        THE COURT:  All right.  And, Mr. Ellis, have you

12    received and read and reviewed with your attorney a copy of the

13    Presentence Report?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Has the Government received a copy of the

16    Presentence Report?

17        MS. THOMAS:  Yes, Your Honor.

18        THE COURT:  All right.  I note that, Mr. Hissam, you

19    asserted one clarification with regard to the Presentence Report,

20    which is not going to have any impact on the guideline

21    calculation and sentence.  I took it, as much as anything, as

22    protecting the record for the lawsuit that is pending.

23        MR. HISSAM:  That's correct, Your Honor, and the

24    financial aspect of that lawsuit, Your Honor, on Mr. Ellis'

25    finances.

1     THE COURT:  I understand.  I understand.  So, I'm going

2  to -- that's not really an objection for me to rule on.  Am I

3  correct that there are no other objections to the Presentence

4  Report?

5     MS. THOMAS:  Yes, Your Honor.

6     MR. HISSAM:  That's correct, Your Honor.

7     THE COURT:  All right.  I do want to make one note, and

8  that is just me making a record as to what I'm doing.  The -- as

9  you're aware, there's a two-level enhancement in the guideline

10  calculation in the Presentence Report under Section

11  2S1.3(b)(1)(A), which states, "If the defendant knew or believed

12  that the funds were proceeds of unlawful activity or were

13  intended to promote unlawful activity, increase by two levels."

14     The Presentence Report, of course, is written in a way that

15  at least suggests that the unlawful activity at issue is the

16  honest services fraud we've talked so much about in these cases.

17     Mr. Hissam, I'm not sure if you're aware of this, I know Ms.

18  Thomas is, but I entered two opinions yesterday that

19  significantly call into question the -- well, it rejected the

20  factual basis for the *Evans* plea based on the honest services

21  fraud which, in my mind, at least, raised a question with regard

22  to whether or not this enhancement might apply.

23     However -- just hear me out on this.  I'm just making a

24  record here.

25     The -- I suppose -- first of all, there's not a lot of law

on this enhancement.  I've looked for it and there's just not much out there.  Second of all, it's not the best-written enhancement I've ever seen and it is focused on what the defendant knew or believed.

Now, if pressed, my guess is the defendant knew, or at least believed, that there was probably something unlawful about making these payments, and I think probably leaving aside honest services, if we scoured the law books of West Virginia and the federal government, we might very well find an offense there somewhere that would apply to this, although we certainly -- I certainly haven't had a chance to do that.  Nonetheless, there was no objection to this enhancement.

I also considered the possibility, if this enhancement didn't apply, of the application of the safe harbor provision in Subsection (b)(3), but that would require the defendant to show that these funds were used for a lawful purpose, which I think might be a bit of a stretch.

So, I struggled with this for awhile, and ultimately concluded that, because there was no objection and because, quite frankly, it's probably not going to have much of an impact one way or the other on my sentencing decision in this case, that I ultimately just decided to leave that alone, but I just wanted the record to reflect my thinking on that in light of the opinions that I entered yesterday.

Does anybody have any comment on that before we move on?

1           MS. THOMAS:  No, Your Honor.

2           MR. HISSAM:  No, Your Honor.  Given that the guideline

3    level, including that enhancement, is stipulated to in the plea

4    agreement, the defendant does not intend to state anything

5    further on that.

6           THE COURT:  All right.  Fair enough.

7       Therefore, I will adopt the Presentence Report and addendum

8    as written.

9       I would note that I've received the sentencing memoranda

10   from both sides.

11      And I have received a total of 11 letters on behalf of the

12   defendant.

13      Has -- Ms. -- well, has everyone seen all of those letters?

14          MS. THOMAS:  Yes, Your Honor.

15          MR. HISSAM:  Yes, Your Honor.

16          THE COURT:  All right.

17      And, Mr. Hissam, would you like those to be made a part of

18   the record to this proceeding?

19          MR. HISSAM:  Yes, Your Honor.

20          THE COURT:  Any objection?

21          MS. THOMAS:  No, Your Honor.

22          THE COURT:  All right.  That will be so ordered.

23      On July 16th, 2014, the defendant appeared before this Court

24   and entered a plea of guilty to a single-count information

25   charging him with structuring and aiding and abetting in

violation of 31 U. S. C. Section 5324(a)(3) and 18 U. S. C. Section 2. At the plea hearing, I deferred a factual basis finding.

I believe, what I would like to do, if there's no objection, is to ask the defendant a couple of questions just to clarify some things about the factual basis.

Is there any objection to that, Mr. Hissam?

MR. HISSAM: No, Your Honor.

THE COURT: All right. Mr. Ellis, just a couple of questions, and these things are generally addressed in the Stipulation of Facts, but I just want to make a very clear record on these particular questions.

You can remain seated.

With regard to this transaction, which is the subject of this particular charge which occurred on September 19th, 2012, am I correct in saying that you and Mr. Herndon, Steve Herndon, worked together to structure this particular transaction?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And he wrote the check?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And then you cashed it for currency?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you both understood that the funds -- that these particular funds from this cashed check were going to pay these kickbacks?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And I believe the Stipulation of Facts

3    indicates that the amount owed at that time to Runion in

4    kickbacks was more than $10,000.00.

5          THE DEFENDANT:  I'm not sure, Your Honor.

6          THE COURT:  Well, the stipulation says that.

7          MR. HISSAM:  I don't think he understood the question,

8    Your Honor.

9          THE COURT:  Actually, I'm basically reiterating a point

10   in the stipulation.  The stipulation reflects that, at the time

11   of this particular transaction, the two of you owed more than

12   $10,000.00 to Runion.

13         THE DEFENDANT:  Oh, yes, Your Honor.

14         THE COURT:  You understood that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right.  And is it true that if it were

17   not for the bank's reporting requirement that you agree that you

18   were trying to avoid by structuring this transaction, that you

19   would have just cashed the amount owed, or at least an amount

20   greater than $10,000.00 on that occasion?

21         THE DEFENDANT:  Yes.

22         THE COURT:  All right.  I believe with that then, I

23   will find that there is a factual basis for the tendered plea and

24   that the elements to the crime have been established.

25         I will adjudge the defendant guilty of that crime and accept

1    the plea agreement that was previously filed.

2        Ms. Thomas, my understanding is the Government has a motion

3    at this juncture.

4            MS. THOMAS:  Yes, Your Honor.  The United States makes

5    a Motion for Substantial Assistance for Mr. Ellis due to his

6    assistance in the prosecution and investigation of others.  The

7    motion is for a four-level adjustment, which represents

8    approximately a quarter of the points of the calculated adjusted

9    offense level of 17 that's currently in the PSR and, if granted,

10   would take him down to a level 13.

11       Some of the information that I would like to relate to the

12   Court, I can relate in open court, and some, I would seek to

13   relate to the Court in camera, as it involves an ongoing

14   investigation.

15           THE COURT:  All right.  Well, can we do it up here at

16   the bench?

17           MS. THOMAS:  It would need to be sealed, Your Honor.

18   We can do it at the bench, but I would ask that that portion of

19   the transcript be sealed.

20           THE COURT:  All right.  Well, that's fine.  Do you want

21   to do the open court part first?

22           MS. THOMAS:  Sure.

23           THE COURT:  Okay.  Go ahead.

24           MR. FRAIL:  Ellis immediately cooperated when he was

25   approached by authorities.  He confirmed and admitted paying

kickbacks at Mt. Laurel to Stephen Herndon and Gary Griffith, who, in turn, provided the funds to David Runion. This information that Ellis provided corroborated information regarding Runion's role in Mt. Laurel, as well as Mr. Griffith's, and it also corroborated the information that Stephen Herndon already provided to the United States.

Ellis also admitted that he essentially had rigged bids with Ronald Barnette, which again corroborated information the United States already had from another individual, and the remainder of the information I would ask that we be able to approach the bench.

THE COURT: All right. You may do so.

(At side-bar.)

(The following portion ordered *SEALED.*)





1

2

3

4

5

6

7

8

9

10

11          (Side-bar concludes.)

12          (*SEALED* portion concludes.)

13          THE COURT:  All right.  Just for the record, the

14     conference at the bench will be under seal.

15          The Government's made the motion pursuant to Section 5K1.1

16     of the guidelines, indicating Mr. Ellis has provided substantial

17     assistance to the United States in the investigation and

18     prosecution of other persons.

19          In determining the motion, both whether or not to grant it

20     and how much of a reduction to grant, the Court may consider:

21     One, the significance and usefulness of the defendant's

22     assistance; two, the truthfulness, completeness and reliability

23     of any information or testimony provided by the defendant; three,

24     the nature and extent of the defendant's assistance; four, any

25     injuries suffered or any danger or risk of injury to the

1    defendant or his family resulting from his assistance; and, five,

2    the timeliness of the defendant's assistance.

3        I will adopt the Government's remarks today as my findings

4    with regard to those factors.  I will grant the motion.  And I

5    will grant a four-level reduction under Section 5K1.1 for this

6    defendant.

7        I am now ready to give my tentative findings as to the

8    applicable guidelines.

9        First, Ms. Thomas, is there a motion for the third level for

10   acceptance of responsibility?

11            MS. THOMAS:  Yes, Your Honor.

12            THE COURT:  That motion will be granted.  Therefore, I

13   find a Base Offense Level of 18, which is actually 6 plus 12 for

14   the amount of the money structured; plus 2 for the enhancement we

15   discussed earlier; minus 3 for acceptance of responsibility;

16   minus 4 for the 5K, for a Total Offense Level of 13; a criminal

17   history category of I based on 0 points, yielding an imprisonment

18   range of 12 to 18 months which, of course, is in Zone C, which

19   allows for a split sentence; a fine range of $3,000.00 to

20   $30,000.00; and a mandatory special assessment of $100.00, which

21   I note has been paid.

22       Are there any legal objections to my tentative findings as

23   to the applicable guidelines?

24            MS. THOMAS:  No, Your Honor.

25            MR. HISSAM:  No, Your Honor.

THE COURT: All right. Mr. Ellis, at this time, the
Federal Rules of Criminal Procedure give you the right to make
any statement that you would like to make, although you're not
obligated to make any statement. However, if you do choose to
make a statement, I would ask that you stand to do so.

THE DEFENDANT: Yes, Your Honor. I just want to thank
my family and friends that showed up today to support me. I want
to thank my family and friends back home, which I know I'm in
their prayers, and I just want to apologize to my family, my
friends, and my employees. And, you know, this has been very
detrimental to me and my family and I just pray that you have
leniency with me today. Thank you.

THE COURT: Thank you, sir. You may be seated.

Mr. Hissam, anything else on behalf of the defendant before
I impose sentence?

MR. HISSAM: Yes, Your Honor, briefly. The Court is
familiar with the dilemma that Mt. Laurel vendors faced in
receiving these demands for payment and we won't belabor that
point. I just want to emphasize a few things about Mr. Ellis'
involvement.

Scott Ellis was never inside at Arch, never in a position of
demanding kickbacks from vendors, or having received kickbacks
from vendors. Number two, Scott Ellis was only paid for work
that he actually performed. He didn't inflate invoices and he
didn't submit false invoices. Third, Scott Ellis did not commit

1 tax offenses in his name, other than structuring, Your Honor,

2 didn't commit any substantive tax offenses.

3 He paid, as noted in the sentencing memorandum, the kickback

4 payments out of the profits of the company even though they were

5 tied into the revenues of the company, which left him, at times,

6 struggling under those payments and, at one point, Mr. Ellis had

7 even quit. His father had died and he had reassessed things and

8 he had walked away, only to exercise another judgment and be

9 lured back in.

10 But fast forwarding to the investigation in this case, Your

11 Honor, when Mr. Ellis received that phone call on a Saturday

12 afternoon from his wife that federal agents were at his house

13 wanting to interview him, he told the case agents that he was

14 going to come back in, and he was going to -- he drove back. He

15 was out of state. He drove back all day Sunday, met with the

16 case agents without a lawyer first thing Monday morning, and told

17 them what he was involved in.

18 And he didn't lie to them. He didn't shade or minimize his

19 involvement. He came clean with them. And, at that time, that

20 was a Sunday, Your Honor, following a lengthy meeting in which

21 Stephen Herndon and Gary Roeher had met with authorities.

22 And, that Monday morning, Mr. Ellis sat down and he was the

23 third person in the door. If he had been home that Saturday,

24 maybe he would have been the first one in the door, but this is

25 the situation that he faces.

1    We wanted to point out to the Court the sentencing

2 disparities and we believe that a variance and sentence of

3 probation would be appropriate given the sentences of probation

4 for Mr. Herndon and Mr. Roeher.  And the Court is also familiar

5 with the sentence for structuring for the same offense for Mr.

6 Brennan recently, who received a status offense level of 17, and

7 received a sentence of probation.

8    And we would respectfully request, Your Honor, a sentence of

9 not only a variance from probation, but a sentence of probation

10 without the condition of home confinement.  Unlike defendants

11 with typical 9:00-5:00 jobs, Mr. Ellis is employed at a business,

12 a family business, that is -- is defunked, Your Honor.  He is

13 trying to slowly sell the assets of that business.  That's

14 intermittent and that sort of comes and goes.

15    The family's plan for survival in the next several months to

16 a year, Your Honor, is that Mrs. Ellis, who was a nurse before

17 she joined the family business, she will re-enter the workforce

18 so that they will have income and that they'll have health

19 insurance.  Because of that, Mr. Ellis will take on greater

20 responsibilities with family.  They have two teenage daughters in

21 high school.  One of them is going to be going off to college in

22 the fall, but is home now, and he's going to have to take on

23 those responsibilities as Mrs. Ellis returns to work so that the

24 family can survive.

25    So, with that being said, Your Honor, we would ask for a

sentence of probation without the condition of home confinement. Thank you.

THE COURT: Thank you, Mr. Hissam.

Ms. Thomas?

MS. THOMAS: Briefly, Your Honor. The United States has set forth its position in its sentencing memo, but it's worth noting, particularly in relation to the 3553(a) factors that refer to the nature and characteristics and circumstances of the offense and the history and characteristics of the defendant that the defendant, by his own admission, which he notes in his sentencing memo that he voluntarily started making kickbacks at Mt. Laurel to generate more work for his company, and then sustained and increased that work by paying more kickbacks. These kickback payments that he, and later joined by Stephen Herndon paid, ensured essentially that Tri-State had a sole source contract for rebuild work at Mt. Laurel.

He further deepened his ties to Mt. Laurel by recruiting Stephen Herndon, and I understand his current account is somewhat different than his initial account, and I understand why. But, in any event, his relationship with Herndon increased the prosperity of that company.

The structuring to which he has been charged and pled guilty was a means to that end, to pay the kickbacks, to participate in bid rigging, and to keep getting work at Mt. Laurel, and I would ask the Court to consider that when imposing a sentence.

1          THE COURT:  Thank you, Ms. Thomas.

2      All right.  After consideration of the advisory guidelines

3  and the other applicable factors under 18 U. S. C. Section

4  3553(a), I am now ready to impose sentence.

5      Will the defendant please stand?

6      Mr. Ellis, structuring is a significant offense in itself.

7  It usually accompanies some other type of crime and, regardless

8  of the legal merits, you were participating in the culture of

9  business corruption in Southern West Virginia by paying these

10  kickbacks, and so that is -- that is a significant offense.

11      On the other hand, I think it is entirely legitimate to look

12  at this overall pattern of activity, particularly with regard to

13  the vendors like you, as a shakedown in which you arguably, at

14  least at some point, became a victim in this.

15      In the beginning, when you took over this company with, from

16  what I can tell, was limited business experience, lots of

17  experience as a welder, but limited business experience, the

18  company was on shaky ground until you were able to build the book

19  of work that you had at Mt. Laurel.

20      Unfortunately, that required you, ultimately, to pay these

21  kickbacks and, obviously, once you did -- you got in there, you

22  did very well and, as I've said before, I don't think there's

23  anything illegal about making a profit, at least in -- viewed

24  outside of these other matters, and I wouldn't assert otherwise,

25  but I believe Runion knew that if you didn't make these payments,

1    and you didn't have this business, your business -- your company

2    might very well fail, and I believe he and the others in the

3    company took full advantage of that.

4        Now, as your counsel indicates, aside from the structuring

5    and the paying of these kickbacks, it doesn't appear that you

6    engaged in any other wrongdoing with this money, including tax

7    violations, or overbilling, or even stealing from Arch or Logan

8    Mingo.

9        I do note that you have no criminal history and there

10   appears to be no need to deter you from further criminal activity

11   or to protect the public from criminal activity by you.

12       I believe a small variance in this case is appropriate.  I

13   believe, based on all the factors I have indicated, I also think

14   that I've got to keep in mind the sentences that I gave the other

15   defendants in this case, including, in particular, Stephen

16   Herndon, whose case is very closely related to yours, but who I

17   view as more culpable than you.

18       You've also, I'd note, already paid a significant monetary

19   penalty, and I can't remember the exact amount, it's over

20   $200,000.00, $215,000.00 and change, by way of forfeiture, and I

21   do believe, to avoid unwarranted disparities and for other

22   reasons, that a small fine is appropriate in this case.

23       Based on all of those factors then, it is the judgment of

24   this Court that you be placed on a period of probation of three

25   years.

While on probation, you must not commit another federal, state or local crime; you must not possess a firearm or other dangerous weapon; and you must not unlawfully possess a controlled substance.

You also must comply with the standard terms and conditions of probation as recommended by the U. S. Sentencing Commission and as adopted by this Court, except that you need not participate in a program of testing, counseling and treatment for drug and alcohol abuse, as I believe that's not indicated, based on my understanding of you from the Presentence Report.

You must also abide by the special conditions of probation as set forth in the local rules of this court.

I am going to impose a $3,000.00 fine. That will be made due immediately. If it is not paid within the next 15 days, it will accrue interest. So, that gives you an incentive to pay immediately.

I do note that -- and you may be seated.

Ms. Thomas, I believe that you have -- you provided me a Final Order of Forfeiture. That appears to be appropriate and I will be entering that probably later today or tomorrow, which should close out the forfeiture aspect of this case.

Mr. Ellis, I note that there is a significant appeal waiver contained in your plea agreement. As qualified by that waiver, you have the right to appeal the judgment of this Court. Any Notice of Appeal must be filed with the Clerk not more than

1    14 days from the date of the entry of the judgment order.

2        If you desire counsel on appeal and you are not able to

3    retain counsel, the appropriate court will review a financial

4    affidavit filed by you to determine whether or not to appoint

5    counsel.

6        Do you understand your right to appeal and the 14-day filing

7    requirement?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  All right.  I will place the Presentence

10   Report under seal subject to counsel's right to unseal as

11   necessary for appeal.

12       Any other matters we need to take up in this case?

13           MS. THOMAS:  No, Your Honor.

14           MR. HISSAM:  No, Your Honor.

15           THE COURT:  All right.  Thank you.

16       (Proceedings concluded at 2:35 p.m., April 22, 2015.)

17

18

19   CERTIFICATION:

20       I, Ayme A. Cochran, Official Court Reporter, certify that

21   the foregoing is a correct transcript from the record of

22   proceedings in the matter of United States of America, Plaintiff

23   v. Scott E. Ellis, Defendant, Criminal Action No.

24   2:14-cr-00111-1, as reported on April 22, 2016.

25

1    s/Ayme A. Cochran, RMR, CRR          January 11, 2017

2    Ayme A. Cochran, RMR, CRR                    DATE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25